UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| NORTON LILLY INTERNATIONAL, INC. | CIVIL ACTION |
| VERSUS | NO. 16-4118 |
| M/V KINATSI, her engines, tackle, apparel, etc. in rem, and KINATSI MARITIME SA, in personam[1] | SECTION "N" |

## ORDER AND REASONS

Presently before the Court is the "Motion for Counter-Security and for a Stay of Proceedings" (Rec. Doc. 15) filed by Defendant and Plaintiff-in-Counterclaim Non Stop Maritime, Inc. ("Non Stop"), owner pro hac vice of the M/V KINATSI.  For the reasons stated herein, **IT IS ORDERED** that motion is **GRANTED IN PART** and **DENIED IN PART**.  Specifically, the motion is granted to the extent that  Plaintiff and Defendant-in-Counterclaim Norton Lilly International, Inc. ("Norton Lilly") is ordered to post counter-security in the amount of amount of $45,915.63 on or before Tuesday, February 21, 2017. **IT IS FURTHER ORDERED** that until such time that the required counter-security is posted by Norton Lilly, this matter is and shall be **STAYED** and **ADMINISTRATIVELY CLOSED**.  To the extent that Non Stop seeks counter-security in excess of $45,915.63, the motion is denied.

---

[1] Pursuant to Rule 41(a)(1)(A)(i) of the Federal Rules of Civil Procedure, Norton Lilly International, Inc. ("Norton Lilly") voluntarily dismissed without prejudice its claim against Kinatsi Maritime SA, in personam on January 10, 2017. *See* Rec. Doc. 25.

## Background

Norton Lilly is engaged in the business of providing agency services in the Port of New Orleans. On or about April 18, 2016, it was retained as Non Stop's port agent for the M/V KINATSI's upcoming call at United Bulk Terminals' Davant, Louisiana facility ("UBT") for loading of 16,500 - 17,400 metric tons of petcoke cargo. On Tuesday, April 26, 2016, the M/V KINATSI arrived at Southwest Pass and proceeded to the ship berth at the UBT facility. Norton Lilly informed the ship's master that UBT planned to commence loading of the vessel on the evening of Wednesday, April 27, 2016. The ship's master advised the stevedoring foreman, UBT, and Norton Lilly that if loading were commenced in Hold No. 3, rather than Hold No. 4, the ship could start necessary deballasting, during the evening of April 27th, while waiting to commence loading. The foreman indicated that he would discuss the ship master's requested load sequence with UBT. Ultimately, however, the shippers and/or UBT rejected the master's recommendation and began loading Hold No. 4.

On Thursday, April 28, 2016, UBT notified Norton Lilly and the vessel that additional dockage charges were being assessed because loading had to be stopped, as of 12:45 p.m that day, to allow the vessel to pump out ballast. UBT claimed dock detention charges of $5,000 per hour, continuing until loading resumed, and subsequently presented an invoice to Norton Lilly in the amount of $80,850, representing 16.17 hours of delay. The M/V KINATSI's master responded by issuing a Letter of Protest to Norton Lilly and UBT, on Friday, April 29, 2016, denying liability for any delays and/or extra costs claimed by UBT. Specifically, Non Stop contends that loading operations were unnecessarily delayed, to allow time for additional deballasting, because UBT had not commenced loading the shop's holds in the order recommended by the ship's master.

Although loading was completed on Friday, April 29th, Norton Lilly refused to make arrangements to clear the vessel for sailing, and order the necessary pilots, because Non Stop had not paid the additional $80,850 claimed by UBT.[2] Norton Lilly also removed (or consented to the removal of) the M/V KINATSI's certificates and papers, and turned them over to UBT, thereby detaining the vessel in port after it was loaded and otherwise was ready to sail.[3]

On May 3, 2016, following its remittance, as port agent for the M/V KINATSI, of the $80,850 demanded by UBT, Norton Lilly commenced the instant action by filing a complaint against the vessel, *in rem*, asserting a maritime lien claim in the amount of $87,582.50 for alleged "necessaries" provided to the vessel by Norton Lilly from April 25, 2016 to May 3, 2016.[4] On May 4, upon motion by Norton Lilly and order of this Court, the M/V KINATSI was arrested by the United States Marshal's Service. Later that day, however, security in the amount of $110,000 was provided to Norton Lilly by Non Stop to obtain immediate release of the vessel.[5]

On June 7, 2016, Non Stop filed a Claim/Statement of Interest relative to the M/V KINATSI in accordance with Supplemental Admiralty Rule E(8).[6] On June 14, 2016, Non Stop filed an answer to the complaint and asserted a counterclaim against Norton Lilly, including a

---

[2] By email communications on April 28 and 29, Norton Lilly advised that UBT would not allow the M/V KINATSI to leave berth until the additional dockage fees were paid. *See* Rec. Doc. 16-1, p. 20 of 72 through p. 24 of 72.

[3] UBT agreed to allow the KINATSI to shift to a nearby anchorage pending payment of funds.

[4] *See* Rec. Doc. 1 at ¶9.

[5] *See* Rec. Doc. 15-2 (Letter of Undertaking dated May 4, 2016). The security provided represents approximately 125% of Norton Lilly's claim in the amount of $87,582.50 as alleged in the Complaint, i.e., 125% of $87,582.50 = $109,478.12.

[6] *See* Rec. Doc. 11.

demand for counter-security. By correspondence dated August 11, 2016, Non Stop provided an itemized statement of damages to Norton Lilly, and requested counter-security in the amount of $78,081.25, corresponding to 125% of Non Stop's $64,465.50 counterclaim.[7] Norton Lilly responded by filing an answer (to the counterclaim) denying Non Stop's entitlement to counter-security.[8]

In its counterclaim, Non Stop contends that Norton Lilly breached its duties as a faithful port agent by not requesting that UBT and/or shippers carry out the loading sequence recommended by the Master of the M/V KINATSI. In addition, Non Stop contends that Norton Lilly failed to protect the interests of the vessel by ensuring that any delays or additional charges incurred as a result of commencing loading Hold No. 4, rather than Hold No. 3, would be for the account of UBT and/or shippers, with no recourse against the vessel. Finally, Non Stop avers that Norton Lilly, after retrieving the ship's papers from UBT, ignored Non Stop's amicable demand to immediately return those documents, and instead continued to hold them at its office to prevent the vessel from sailing. Such conduct, Non Stop contends, resulted in additional delays and unlawful detention of the M/V KINATSI by self-help carried out without Court approval or authorization, constituting an unlawful and wrongful exercise of dominion, ownership, or control over the property of the vessel.

Because of Norton Lilly's continued refusal to clear the vessel for sailing, Non Stop alleges, it was forced retain another port agent to clear the vessel and mitigate its losses and damages. Non Stop claims that Norton Lilly is justly indebted to for these additional port agent

---

[7] *See* Rec. Doc. 15-3.

[8] *See* Rec. Doc. 14.

charges and expenses, and further that Non Stop is entitled to a return of any agency fees and/or advances paid to Norton Lilly for services not rendered to the vessel, unearned disbursements, fees, or charges, and any sums that were not disbursed.  With the instant motion, Non Stop asks that the Court: (1) order Norton Lilly to provide Non Stop with counter-security in the amount of $78,081.25 for the damages demanded in Non Stop's counterclaim; and (2) order a stay of proceedings until Norton Lilly provides counter-security to Non Stop.

### **Law and Analysis**

In support of its motion, Non Stop relies on Supplemental Admiralty Rule E(7), which provides:

> (7) Security on Counterclaim.
>
> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct; and proceedings on the original claim shall be stayed until such security is given, unless the court otherwise directs. When the United States or a corporate instrumentality thereof as defendant is relieved by law of the requirement of giving security to respond in damages it shall nevertheless be treated for the purposes of this subdivision E (7) as if it had given such security if a private person so situated would
> have been required to give it.

See FED. R. CIV. P. SUPP. AMC RULE E (7).  The ordering of counter-security is within the Court's discretion.  *Titan Nav., Inc. v. Timsco, Inc.*, 808 F.2d 400, 404 (5th Cir. 1987).  In exercising that discretion, the Court "is to be guided by the essential and equitable purposes of the rule.  In doing so, the court must weigh the importance of the security interest giving rise to the initial seizure, and the burden of posting counter-security, against the potential injustice of requiring the

defendant-counterclaimant to post security without affording reciprocal protection." *Id.*

Opposing Non Stop's motion, Norton Lilly relies on the Fifth Circuit's conclusion, in *Incas and Monterey Printing and Limited v. Sang Jin*, 747 F.2d 958, 964 (5th Cir. 1984), *cert. denied,* 471 U.S. 1117 (1985), that counter-security for a counterclaim of wrongful arrest and/or malicious prosecution should not be granted, pursuant to Supplemental Admiralty Rule E(7), because the counterclaim did not arise out of the same transaction or occurrence as the main claim. The Court reasoned:

> Under the broad test for Rule 13(a) adopted by this Circuit, a counterclaim is compulsory when there is any "logical relationship" between the claim and the counterclaim. *Plant v. Blazer Financial Services,* 598 F.2d 1357 (5th Cir.1979). *See also* 6 C. Wright & A. Miller, Federal Practice & Procedure § 1410 (1971) (indicating breadth of this test). However, even under this liberal standard, it is clear that an action in the nature of wrongful seizure or malicious prosecution does not lie as a compulsory counterclaim under F. R. Civ. P. 13(a). *See, e.g.*, *Olsen v. Puntervold,* 338 F.2d 21 (5th Cir. 1964) (malicious prosecution); *U.S. General, Inc. v. City of Joliet*, 598 F.2d 1050 (7th Cir.1979) (malicious prosecution). *See* generally 3 J. Moore, Moore's Federal Practice ¶ 13.13, 13–78, n. 26 (2d ed.1984).
>
> Such a counterclaim not "arising out of the same transaction or occurrence" as the original action for purposes of federal practice, and there being neither history nor practice in the admiralty suggesting any difference, we see no justification for applying Rule E(7) to a broader class of counterclaims than that permitted under F. R. Civ. P. 13(a). This is especially appropriate in light of the 1966 Unification of Admiralty and Civil Practice. We therefore conclude that, whether or not an action for wrongful seizure, abuse of process or malicious prosecution may be asserted as a counterclaim in admiralty practice, counter-security under Rule E(7) may not be required for such a claim.

*Id.* at 964-65. In response, Non Stop points the Court to *State Bank & Trust Co. of Golden Meadow v. Boat D.J. Griffin,* 731 F. Supp. 770, 774 (E.D. La. 1990), wherein the district court concluded "*Incas* is intended to apply only in situations where the wrongful seizure counterclaim does not arise

out of the "same aggregate of operative facts."

Considering the foregoing authorities in the context of the instant proceeding, the Court, on the showing made, finds it readily apparent that certain of the damages claimed by Non Stop arise out of the same transaction or occurrence as the main claim. In its complaint, Norton Lilly seeks reimbursement for additional fees that it, as Non Stop's port agent, advanced when Non Stop failed to render timely payment in response to UBT's demand for additional monies allegedly owed because of loading delays. As the Court understands the parties' positions, the $18,732.50 claimed in Non Stop's counterclaim for "(A) Estimated additional shifting/agency costs incurred after completion of loading on 4/20/2016,"[9] arises from the same transaction(s) or occurrence(s) as Norton Lilly's reimbursement claim for additional fees charged for loading delays experienced during deballasting operations ("loading delay charges"), and the additional expenses incurred thereafter when Non Stop did not transmit payment, as demanded by UBT and Norton Lilly, for the loading delay charges. The same is true relative to the $18,000 claimed for three days of charges (prior to the Court-authorized arrest of the vessel on May 4, 2016) of $6,000 daily for "(B) Unlawful Detention /Wrongful Seizure of Vessel on Account of Norton Lilly."[10]

On the other hand, Non Stop's submission does not adequately identify the applicable time periods and services for which a $25,000 "(C) Rough Estimate Attorneys' Fees for Unlawful Detention/Wrongful Seizure" is sought.[11] Thus, the Court is unable to determine if certain of those fees arise from the same pre-attachment occurrences giving rise to the damages identified in

---

[9] *See* Rec. Doc. 15-1, pp. 5-6.

[10] *Id.* at p. 6.

[11] *Id.*

7

categories (A) and (B) above, or instead whether they are properly attributable solely to legal services provided in connection with and in response to the May 4, 2016 arrest of the M/V KINATSI ordered by this Court.[12]  Because it is not readily apparent that legal fees and costs incurred in response to the May 4, 2016 attachment of the vessel arise from the same transaction(s) and occurrence(s) giving rise to the main claim asserted by Norton Lilly, the Court declines to order any counter-security relative to the $25,000 sought by Non Stop for category "(C) Rough Estimate Attorneys' Fees for Unlawful Detention/Wrongful Seizure."[13]

Given the foregoing determinations, **IT IS ORDERED** that Norton Lilly shall post counter-security in the amount of $ 45,915.63 (125% of $36,732.50) on or before Tuesday, February 21, 2017.  **IT IS FURTHER ORDERED** that until such time that the required counter-security is posted by Norton Lilly, this matter is and shall be stayed and administratively closed.

New Orleans, Louisiana, this 6th day of February 2017.

**KURT D. ENGELHARDT**
**United States District Judge**

---

[12] *See* Rec. Docs. 6, 7, and 9.

[13] *See* Rec. Doc. 15-1, pp. 5-6.

8